## IKE BELL v. THE STATE.

1. BILL OF EXCEPTIONS.—To a bill of exceptions to the admission of evidence the district judge certified that it was "not allowed," giving the reasons for his ruling in admitting the evidence, and ordering the bill to be made part of the record. *Held,* that, as the bill sets out facts which occurred at the trial, and is signed by the judge and made part of the record, the court will recognize it and revise the ruling excepted to.

2. SAME.—When any charge, order, or ruling made by the court below is excepted to by the accused, and he tenders a bill of exceptions correctly setting forth the facts, it is the duty of the judge of the court to sign it, though he may further certify the reasons for his ruling. That a mere objection to evidence was taken, and no ground for it assigned, does not justify the judge in refusing to give a bill of exceptions correctly setting out the facts.

3. SAME.—As a general rule, the grounds of objection to evidence should be stated when the objection is interposed, and should also be set out in the bill of exceptions; but there are exceptions to this general rule, as, for instance, when a mere unsworn written statement of a witness was offered by the prosecution in lieu of the witness himself. Such a document carried on its face its own incompetency, and should have been excluded on a mere naked objection.

4. CONSTITUTIONAL RIGHT OF ACCUSED RESPECTING ADVERSE WITNESSES.— By the constitutional provision that in all criminal prosecutions the accused "shall be confronted with the witnesses against him," the right of cross-examination is secured to him—one of the principal and most efficacious tests devised by the law for the discovery of truth and the detection of falsehood.

5. PRIVILEGE OF COUNSEL FOR THE DEFENSE.—Whatever latitude may be allowable to a defendant's counsel in the control and management of his client's cause, he has not the power to jeopardize the life or liberty of his client by an agreement to accept a written statement in lieu of an adverse witness' personal testimony, or to waive the sanction of the witness' oath.

APPEAL from the District Court of Bexar. Tried below before the Hon. GEORGE H. NOONAN.

The case is stated in the opinion of the court.

*Bethel Coopwood*, for the appellant.

*H. H. Boone*, Attorney General, for the State.

ECTOR, P. J.   The defendant was indicted and convicted of burglary, and his punishment assessed at three years' confinement in the penitentiary.   He has assigned a number of errors committed by the district court on his trial, only one of which we propose to notice in this opinion.

During the trial the counsel for the state offered in evidence a written statement of facts, made by Maj. G. B. Russell, which was not made under oath, with an agreement of M. G. Anderson, for the defendant, that it might be read in evidence.   M. G. Anderson, as shown by the record, was the attorney for the defendant when he signed this statement.   Since that time, and before the case was tried, he was elected county attorney for Bexar county, which dis-

qualified him from appearing as attorney for the defendant, after his election.

T. G. Anderson and F. G. Smith were the counsel for the defendant on the trial of the cause, and, as his counsel, objected to the admission of this written statement of Maj. Russell, when it was offered in evidence by the counsel for the prosecution. Their objections were overruled by the court, and said written statement was read in evidence; to which ruling they, as counsel for the defendant, excepted, and tendered the court a bill of exceptions; which bill of exceptions, the attorney general says, cannot be considered by the court of appeals, because it was not allowed by the district court.

In order to present this question fairly, we will copy this bill of exceptions, and the indorsement made on it by the court. After giving the style and number of the case, the court where pending, and the term thereof, it proceeds as follows:

"Be it remembered that, on the trial of this cause, the attorney who prosecuted for the state offered in evidence the following written statement of Maj. G. B. Russell, with the agreement thereon, as evidence to the jury; said agreement being signed by M. G. Anderson, one of defendant's attorneys, but now county attorney of Bexar county, Texas.

"'San Antonio, Texas, *May 13,* '75.

"'To M. G. Anderson, Atty., etc.:

"'Sir: In connection with my conversation with you this morning I respectfully submit the following as my knowledge of facts bearing upon the case of the *State of Texas* v. *Ike Bell,* viz.: I resided (on the 7th of Feby. last) in the house known as the 'Guilbeau House,' rented by Brig. Gen. Auger. On the morning of the 7th of Feby. I retired about half-past one, having shut the door of my room and that of the room adjoining. About seven A. M. Lieut. Auger

woke me, announcing that the house had been entered. I jumped up and found that my pants, which I had left by my bed, were not where I had left them. Lieut. Auger and I then went into the adjoining room, where the pants were found on the floor. My pocket-book, which I had left in my pants, was missing. It was subsequently found on the floor of the parlor, down stairs, the contents, except money, being on the floor. When I retired there was in the pocket-book one Spanish doubloon, 1776, value $15.50; one Maximillian dollar, value $1; and $12.00 or $13.00 in currency. All this money had been abstracted from my pocket-book by some person or persons unknown to me, and without my knowledge or consent. The door of the front entry was open, and bore marks of having been forced. The bolt had been bent back like a hook, and the lock was shot, the door having been forced by prying back the door until the latch passed by the catch.

"'I am under recognizance to appear as a witness on 12th of June, but would esteem it a special favor if counsel could so arrange it as to accept my deposition of the facts as above, as to remain would greatly interfere with my duties to government and to my personal arrangements. In order to stay, I will have to ask an indulgence, and apply for other officers to perform my duties, devolving upon me in Louisiana and Mississippi.

"'I find that I have neglected to relate the identification, which was as follows: On the 11th of Feby. I next saw the doubloon above referred to, in the hands of Tenie Murray, a servant of Colonel Taylor. I immediately and fully identified the piece as the identical one stolen from me, it having been a pocket-piece for years, and used frequently in a round game of cards.

I am, sir, most respectfully, your obedient servant,
"'G. B. Russell, U. S. Army.
"'I hereby agree to have this read upon the trial of the

case against Ike Bell, in the district court, Bexar county, Texas, this 15th May, 1875.

" ' M. G. ANDERSON, *for defendant.*
" ' Filed May 19, 1875.
" ' SAMUEL L. SMITH, *Clk. D. Ct. B. Co.*
' " By HENRY L. RADAZ, *Dept.*' "

" To the reading of which, as evidence, the defendant, by attorney, objected, which objection was overruled by the court, and the statement of G. B. Russell read to the jury ; to which ruling of the court the defendant, by his attorney, then excepted, and tendered this his bill of exceptions, and prays that the same be signed and made a part of the record in this cause, which is done.

" The above exception is not allowed. There was no attorney known to the court, at the time the agreement was made, other than M. G. Anderson Esq., and he ceased to act as such attorney when elected county attorney for Bexar county. But, lest any right of the defendant should be impaired by a refusal of this exception in the form presented, the clerk is hereby authorized to include it in the record.

[Signed.]         " G. H. NOONAN, *District Judge.*"

We think that defendant's bill of exception taken to the ruling of the court in admitting the written statement of Maj. Russell, even in the manner it comes before us, does bring the question as to its admissibility fairly before the court. It gives the facts in regard to it as they occurred on the trial ; and it is signed by the judge officially. The clerk was authorized by the judge to include it in the record, which was accordingly done.

It is the duty of the judge who presides at the trial, when any charge, order, or ruling made by him is excepted to by the defendant, who tenders a bill of exception to the action of the court, if it states the facts as they occurred, to sign it. If he desires to give a reason for his ruling, it is proper that

he should do so.    If an objection to testimony is not well taken, for the reason that it does not show the ground of the objection, this is no excuse for the judge to decline signing the bill of exceptions.    It is the defendant's right to have a fair bill of exceptions, so that the action of the lower court can be passed upon by an appellate tribunal.

The explanation of the presiding judge to the bill of exceptions in the case at bar does not deprive the defendant of his right of having this court pass upon the ruling of the district court on the objections of the defendant to this evidence.    As a general rule a party objecting, both in civil and criminal cases, should state the ground of his objection, and, in taking his bill of exceptions, " lay his finger on those points which arise, either in admitting or denying evidence ;" but there are exceptions to this general rule, and this case comes within such exceptions.

When this written statement, made not under the sanction of an oath, was offered in evidence by attorney for the prosecution, we believe it was sufficient for the counsel of the defendant to object to it, without stating the ground of their objection.    This statement was no more than a blank piece of paper.    It carried the evidence on the face of it that it was not such testimony against a defendant on trial in a criminal case as the law authorized ; and the district court should, we think, have sustained the objection in the form made to it by the defendant's counsel.    Article 1, section 10, of the Constitution of this state provides that in all criminal prosecutions the accused " shall be confronted with the witnesses against him."    The defendant, by this provision of the " Bill of Rights," is secured the inestimable privilege of cross-examining the witnesses who appear against him.    The power of a cross-examination has been justly said to be one of the principal, as it certainly is one of the most efficacious, tests which the law has devised for the discovery of truth.    By means of it the situation of the

witness with respect to the parties, his motives, his inclina-
tions and prejudices, his means of knowing the facts to
which he testifies, and his memory can then be investigated
and submitted to the consideration of the jury.

Mr. Greenleaf says : " It is not easy for a witness who is
subject to this test to impose on a court or jury, for, how-
ever artful the fabrication of falsehood may be, it cannot
embrace all the circumstances to which a cross-examination
may be extended." 1 Greenl. on Ev., sec. 446. It fre-
quently happens by this means that important testimony
in a case is extracted from an unwilling witness, which has
the more weight with an intelligent jury because it has .
appeared by the force of examination, in opposition to an
obvious desire to conceal.

Mr. Phillips, in his work on Evidence, says : " The power
of cross-examination is generally allowed to afford one of
the best securities against incomplete, garbled, or false evi-
dence ; great latitude is, therefore, allowed in the mode of
putting questions." Ph. on Ev., 4th Am. ed., 895. While
as a general rule much latitude is allowed an attorney for
the defendant in the management and control of the cause
of his client, we do not believe that, in a case involving the
life or liberty of his client, an attorney at law is authorized
to make such an agreement as the one we are now discuss-
ing, which would be binding on his client. The law does
not, and should not, confer such a power on an attorney at
law. It does not, and should not, sanction such a rule of
practice, the effect of which would be to deprive the defend-
ant on his trial of that great constitutional privilege, so
essential to liberty and free government, of being con-
fronted by the witnesses against him, and the benefit of a
cross-examination ; or that the defendant's counsel can waive
another most important provision of the law for securing
the purity and truth of evidence—namely, that rule of evi-

dence which requires that it be given under the sanction of an oath.

This written statement the court allowed to go to the jury as evidence, and the most that can be said of it is that it was an agreement made between Maj. Russell and an attorney for the defendant. The state was not a party to it, and was not bound by it. The state exacts strict obedience to her penal laws; so ought she strictly to observe the rules she has laid down to try and punish those who violate them.

An examination of the statement of facts as found in the record will show that the prosecution relied alone upon this written statement of Maj. Russell to prove the *corpus delicti*.

The judgment of the district court is reversed and the cause remanded.

*Reversed and remanded.*